The opinion of the Court was delivered by
Tilghman C. J—On
the trial of this cause, in the Court below, the counsel for the plaintiffs took two bills of exceptions, and they have now made three' objections to the charge of the Court.
First bill of exceptions. The defendants offered to prove, by the testimony of Lawrence Bathurst, that in the year 1786, .a certain Paul Wilcot, lived on part of the land in dis *122 pute, and also to prove, how long Wilcot lived there, and who were in possession after him, and generally to prove, who were in possession from time to time. The plaintiffs objected to any evidence of possession, after the time of Wilcot, but the Court overruled the objection, and admitted the evidence. It was very material for the defendants to prove the possession, as they depended on the act of limitation, nor do I see any reason for rejecting the evidence of possession after the time of Wilcot. Indeed, the plaintiffs’ counsel have not insisted on this exception, as the bill is so drawn, as to omit the point on which their objection was founded.—They say, they intended only to object to the evidence of any possession after Wilcot, unless it was shewn, that such subsequent possession was so connected with Wilcot, as to be a continuation of his possession. But as the exception is not so stated on the record, it is now relinquished.
Second bill of exceptions. The defendants gave in evidence, a caveat by Richard Gonzalus, against James Packer, £who had purchased of Samuel Wallis,') entered in the land office, 6th November, If88, and the decision of the Board of Property thereon, 4th May, lf89, to the following effect. « It appearing by the affirmation of Samuel Wallis, Esq., that Benjamin Brown, under whom Gonzalus claims, in the year lfff9, set up a claim under that application, to a tract in a different place from that now claimed by Gonzalus, and that a part of the land now claimed, is already patented; therefore, his caveat is dismissed, and a patent allowed to Packer.” The plaintiffs then offered to give in evidence, the deposition of Samuel Wallis, referred to in the decision of the Board, to which the defendants objected, and the Court rejected the evidence. If this evidence was material in any point of view, it ought to have been received •, and that it was material to one purpose, is very evident. The decisions of the Board of Property are allowed to be read in evidence, but are not conclusive. ■ The Court and jury allow them just such weight, as in their opinion they deserve, and no more. It is of importance, therefore, to shew all the circumstances-attending those decisions—whether they were made ex parte, or after hearing the parties, or giving them due notice— whether the evidence before the board was legal, and par *123 iicularly, whether it was ex parte. Now the plaintiffs contend, that this deposition of Samuel Wallis, was made before his brother, Joseph J. Wallis, without notice to Gonzalus. If that was the case, the decision of the Board, which professes to be founded solely on that evidence, was of very little weight. I am therefore very clear, that the evidence ought to have been admitted. Indeed this very point was decided by this Court once before, when a former judgment in this cause was reversed, and a venire de novo awarded. I presume that this decision was unknown to the Court of Common Pleas, or they would have spared us the trouble of deciding it over again,'and spared' the parties the delay and expense attending another trial.
I will now consider the objections to the charge of the Court.
1. The President charged the jury, “ that if they should be of opinion, that the plaintiffs had no survey made by legal authority, seven years adverse possession would bar them, by the act of limitations ; and in this case, if the jury believed the evidence, the possession of the defendants had been much longer.” Before I examine the correctness of this opinion, it will be proper to consider, what the evidence was. The defendants had been proved to be in possession of a small part, to recover which, this suit was brought, and the plaintiffs had been in long possession of the residue of a tract of land, claimed under a warrant alleged by them to be descriptive, and the boundaries whereof had been proved to he ascertained by marked lines. The act of limitations, f26th March, ±785, 1 Sm. L. 300,) requires 21 years adverse possession, to bar an ejectment, in generaW-but in certain cases, mentioned in the 5th section, seven 3'ears are sufficient. It is enacted, “ that any person who then had any claim to the possession of any lands, or the pre-emption thereof from the Commonwealth', founded on any prior warrant, whereon no survey had been made, or in consequence of anyT prior settlement, improvement, or occupation, without other title, should not thereafter enter, or bring any action for the recovery thereof, unless he or his ancestors or predecessors, had the quiet and peaceable possession of the same, within s.even years next before such entry, or bringing such action.” The meaning of,the act is, that in *124 case of a warrant, the claimant might enter or bring his action, in case he bad a survey, or in case he had quiet and peaceable possession within seven years, although there had been no survey. This was thought reasonable, because it was well known, that in many instances, persons who had descriptive warrants, had entered and held the possession, without survey, and in such cases, the possession was sufficient notice, that the land was not vacant; but where there was neither survey, nor possession within seven years, it was impossible, that either the proprietary officers, or those who wished to take up vacant land, could know, that the holder of such a warrant, intended to prosecute it; aud he could liot complain, if, after such gross negligence, the law should presume that he had abandoned it. Now to apply the reason of this law to the case before us. Here, the holder of the warrant had taken possession ; had ascertained the limits by marked boundaries, and had taken up his residence on the land, cleared a large quantity, and cultivated and improved it, not only within seven years next before his action, but for many more years than seven, without interruption, up to the time of bringing the suit. Surely such a case was not within the meaning of the 5th section of the act of limitations, but would fall within the general provision which required 21 years adverse possession. This would be my opinion, if the point were quite new—But it is not so.—It came before the Court, in the case of Brice’s Lessee v. Curran, tried at Nisi Prius in Mifflin county, May, 1802, (2 Sm. L. 806.) when Judge Yeates gave to this act, the construction which I have adopted. The President of the Court below, ought to have instructed the jury, that if they thought the location to be reasonably descriptive of the tract claimed by the plaintiffs, and that the plaintiffs had ascertained the limits of their claim by marked lines, entered on the land, resided there, and actually possessed and cultivated a considerable part, within seven years next before their action, nothing lpss than 21 years adverse possession of the small part held by the defendants, would bar this ejectment. And in not so instructing them, I am of opinion that there was error.
2. The President instructed the jury, “ that the defendants, having obtained the legal estate by virtue of the patent, *125 and being purchasers for a valuable consideration, were protected against all claims or rights of the plaintiffs, of which they had no notice.” The law of land titles in Pennsylvania, is singular. I mean of the acquisition of the original title, from the former proprietaries, or from the Commonwealth. The title under the patent, may be controverted by one who claims under an imperfect title, depending on a settlement, warrant, or location, without patent; and then the question will be, to whom the patent ought to have been granted by the land office. The law has never been held in the great extent laid down in this charge—that by obtaining a patent, and selling to a purchaser for a valuable consideration, all enquiry as to adverse claims, founded on an equity arising previous to the patent, was precluded. If a deputy survey- or, should fraudulently return for A., a survey which he had made for B; that might be enquired into, although A., had obtained a patent, and sold to a purchaser for valuable consideration, without notice of the fraud. I am sensible, that this places purchasers in a hazardous situation—but both sides of the question are to be taken into consideration.— The long practice of taking up lands, and obtaining an equitable title without patent, has so generally prevailed, that upon the whole, the mischief would be greater, if it were established as a general rule, that a patent in the hands of a purchaser without notice, would shut the door against all proof of ah imperfect adverse title, acquired previous to the patent. I am not to be understood as laying down any general rule now; it would be dangerous to do so. Most cases will be influenced by the conduct of the parties ; and it should always be expected, that he who rests on an imperfect title, should shew, that he hás not been guilty of gross laches, whereby an innocent purchaser, for a valuable consideration, has been injured. In the present instance, I am of opinion, that the charge was erroneous.
The third objection is, that the Judge left to the jury, to decide on constructive notice, which is matter of law.
To be sure, constructive notice is matter of law, and the law should always be explained to the jury. In the present instance, the Judge did leave to the jury to decide, whether the defendants had received notice, actual, or constructive, and if he had said nothing else, there would have been error. But upon viewing the whole charge, it appears, that the *126 jury were told, that notorious possession was constructive notice; so that upon the whole, the jury were not left without sufficient instruction in law, on that point. In this part Q£ t^e cbarge therefore, there was no error. Upon the w^°^e’ * am opinion, that the judgment should be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded.